Houck *vs.* Wachter.

(Decided 3d March, 1871.)

MICHAEL HOUCK *vs.* LEWIS F. WACHTER, of P.

*Nuisance—Obstruction of a Highway—When right of Action arises—What constitutes Special damage.*

The obstruction of a highway is a common nuisance and being a wrong of a public nature, the remedy is by indictment; it is not in itself a ground of civil action by an individual, unless he has suffered from it some special and particular damage, different not merely in degree, but different in kind from that experienced in common with other citizens. In such case the actual damage constitutes the gist of the action, and must be averred and proved.

The mere fact that by reason of the obstruction, the plaintiff was obliged to travel a longer and more circuitous route, is not such special damage as to entitle him to maintain an action.

Though the plaintiff may suffer more inconvenience than others from the obstruction, by reason of his proximity to the highway, that will not entitle him to maintain an action.

The rules of law allowing such actions ought not to be extended.

APPEAL from the Circuit Court for Frederick County.

The facts are sufficiently given in the opinion of the Court.

The cause was argued before BARTOL, C. J., STEWART, MILLER, ALVEY and ROBINSON, J.

*Albert Ritchie,* for the appellant.

The Court erred in overruling the demurrer. The obstruction of a highway is a public nuisance, the remedy for which is indictment. There can be no private action for a public nuisance, unless the plaintiff has suffered special damage. *Mayor & C. C. of Baltimore vs. Marriott,* 9 *Md.,* 160.

When special damage is the ground of action it must be set forth in the declaration. *Jones vs. Hungerford,* 4 *G. & J.,* 402; *Howard vs. Wil. & S. R. R. Co.,* 1 *Gill,* 311; *Ellicott vs. Lamborne,* 2 *Md.,* 131; *McTavish vs. Carroll,* 13 *Md.,* 429; *Sedgwick on Dam.,* 141, 575.

There is no special damage laid. The *per quod* simply alleges that by means of the obstruction, the appellee was "deprived of the use of said highway." This was an inconvenience, or damage, suffered in common with all others, and therefore not special. In an action for obstructing a private way, the *gravamen* is the obstruction; but for obstructing a public way, the special damage is the *gravamen,* and it must be set forth under the *per quod.* *Baxter vs. Winooski T. Co.,* 22 *Verm.,* 114; *Lansing vs. Smith,* 8 *Cow.,* 147; *Bap. Ch. of Schenectady vs. Sch. & T. R. R.,* 5 *Barb.,* 84.

Whatever is not the *necessary* consequence, is special damage, and must be set forth. Even if the plaintiff could go behind the *per quod,* there is no special damage in the averment that he had to go a " very circuitous route." A longer

route might have been a smoother, and a better, and a quicker one. Therefore, (if consequential damage be sufficient) if by going a circuitous route he suffered special damage, *what was it?* It is not set forth, and therefore the *narr.* is defective.

The *narr.* either claims general and special damages *both*, or else only general damages, and in either case is bad.

The wrong complained of cannot be laid with a *continuando*, or "at divers times."

A permanent trespass may be laid with a *continuando*, and distinct, independent trespasses may be laid "at divers times," but a wrong which exhausts itself in the commission, *e. g.*, killing a horse, an assault and battery, etc., cannot be laid with either. In a suit for a private nuisance, the plaintiff may show its continuance, because the fact of its existence is the cause of action, and its duration an element of damage. But in a private suit, the existence or continuance of a public nuisance gives no right of action.

The special damage is the *gist* of the action, while the existence of the nuisance is a wrong against the public, redressed by indictment. *Gould's Pl.*, secs. 85-95; *Mitchell vs. Neale*, 2 *Cowp.*, 828; 9 *Bac. Ab., Trespass* I, 2.

The declaration shows no sufficient cause of action. No private suit lies except for some "extraordinary damage beyond the rest of the king's subjects." The damage must be peculiar to the party who suffers, not such as has been or may be experienced by the public generally; and it must differ in *kind*, not merely in *degree*, from that to which all are exposed. Greater proximity to the highway, or having more frequent occasion to use it, gives no ground of action. It must not only differ in kind, but it must be substantial, and not imaginary, or theoretical, or within the ill-favor of actions *de minimis*. It is no ground of action that a party may be incommoded, or put to a greater distance, or delayed, or turned back, or subjected to personal inconvenience. These things constitute the offence *against the public*, and it is for these that a party is indicted. But there is nothing in these

things peculiar to the individual, and, therefore, there is no right of private action. *Sel. N. P.*, (*7th Am. ed.*) 1120, *and* (*13th Eng. ed.*,) 1072; *Hart vs. Bassett*, 1 *T. Jones*, 156; *Paine vs. Patrick, Carth.*, 191; *Iveson vs. Moore*, 1 *Ld. Raym.*, 486; *Rose vs. Miles*, 4 *M. & S.*, 101; *Chichester vs. Lethbridge*, 1 *Burie*, 71; *Hubert vs. Groves*, 1 *Esp.*, 148; *Greasly vs. Codling*, 2 *Bing.*, 263; *Wilkes vs. Hungerford*, 2 *Bing., N. C.*, 281; *Rose vs. Groves*, 5 *M. & G.*, 613; *Ricket vs. Metr. R. Co., L. R.*, 2 *H. of L.*, 175, (*S. C.*, 16 *Law Times, N. S.*;) *Winterbottom vs. Derby, L. R.*, 2 *Exch.*, 316; *Harrison vs. Sterett*, 4 *H. & McH.*, 540; *Barron & Craig vs. Baltimore*, 2 *Am. Ju.*, 203; *Stetson vs. Faxon*, 19 *Pick.*, 147; *Co. Com. A. A. Co. vs. Duckett*, 20 *Md.*, 468; *Thayer vs. Boston*, 19 *Pick.*, 511; *Quincy Canal vs. Newcomb*, 7 *Met.*, 283; *Seeley vs. Bishop*, 19 *Conn.*, 134; *Abbott vs. Mills*, 3 *Verm.*, 521; *Butler vs. Kent*, 19 *John.*, 223; *Lansing vs. Wiswall*, 5 *Den.*, 213; *Smith vs. Lockwood*, 13 *Barb.*, 209; *Story vs. Hammond*, 4 *Ohio*, 376; *Barr vs. Stevens*, 1 *Bibb*, 292.

The appellee's case is not within the most extended application of the principle. He avers no personal injury, no damage to property, or business, no expense, and nothing but what is imposed upon every body by every obstruction, that is, if the obstruction be impassable, to go around it, or take another road.

*Wm. P. Maulsby, Jr.*, for the appellee.

To sustain the action, particular damage must be alleged and shown; not *special* damage in its technical sense. *Mayne on Damages*, 257.

The particular damage is properly laid. The cause of action fully appears. The objection that the particular damage should be set out in a *per quod*, is too formal; the particular damage suffered is plainly averred. *Code, Art.* 75, *sects.* 3–7.

The averment, "at divers times," &c., is sufficiently special. The wrong complained of is not the continuance of the nui-

sance at divers times, but the suffering at divers times of the particular injury. *Gould on Pleading*, 92.

The claim is for damages for particular injury, not special damages. The words, "hath been and still is," &c., may be omitted, and sufficient claim for damages is still averred. The true principle is that any, the least injury to an individual, as an expense of time, or money, or labor, &c., entitles him to an action. It is a special damage as contradistinguished from the injury to the public in general, which is theoretical, or vesting in presumption of law only. 7 *Cowen*, 609; *Iveson vs. Moore*, 1 *Ld. Raymond*, 486; *Greasly vs. Codling*, 2 *Bingham*, 263; *Rose vs. Miles*, 4 *Maule & Sel.*, 101; *Wilkes vs. Hungerford*, 2 *Bingham*, *N. C.*, 281; *Rose vs. Groves*, 5 *Manning & Granger*, 613; 19 *Pickering*, 147; 1 *Binney*, 463.

BARTOL, C. J., delivered the opinion of the Court.

This suit was brought by the appellee to recover damages for the alleged obstruction of a highway by the appellant.

The first question presented by the record, and one which, in the opinion of a majority of this Court, is decisive of the case, arises upon the demurrer to the amended declaration. The ground of the demurrer is that the declaration does not contain any sufficient averment of special and particular damage suffered by the plaintiff from the obstruction complained of, to support the action. The obstruction of a highway is a common nuisance, and being a wrong of a public nature, the remedy is by indictment; it is not in itself a ground of civil action by an individual, unless he has suffered from it some special and particular damage, which is not experienced in common with other citizens. 9 *Md.*, 178. In such case, the actual damage constitutes the gist of the action, and must be averred and proved.

These principles are well settled, and the only difficulty that can arise, grows out of their application to particular cases. With respect to what constitutes such special and particular

damage, the decisions do not appear to have been entirely harmonious. We think, however, the present case is free from difficulty, and by recurring to the averments in the declaration, is of simple and easy solution.

After alleging the existence of the common highway, and that it was the customary, and most direct and convenient route for the plaintiff to pass and re-pass to and from the county town, mills, market, &c., with his horses, wagons and carriages, the declaration avers that the defendant wrongfully obstructed the same, by building a fence across it, which prevented the plaintiff from driving his horses, &c., laden with the products of his farm, and other commodities, over said highway, by reason of which the plaintiff was obliged to drive his horses, &c., laden as aforesaid, back again, and by a very circuitous road, and for a much greater distance than he otherwise would, and of right ought to have done."

Then follows the averment of special damage in the following words:

"And the plaintiff says that he had made a journey with his said horses and wagons, from his said farm, through and over said highway, to his market town, to wit: Frederick city, in said county, and on his said journey, was returning to his said farm, when he met the said obstruction, and was withheld by the defendant from removing the same, so that he could not pass, and was obliged to proceed to his said farm, from said market town, by a very circuitous route; and the plaintiff says that, at divers other times, he was greatly hindered and delayed, and put to great loss of time and money, by reason of being compelled, by means of said obstruction, to go and return, pass and re-pass to and from his said farm, by a very circuitous road, and of much greater distance to the said market town, and to mills and said court-house, than he otherwise would and of right ought to have done, with his said horses, wagons and carriages, laden as aforesaid; and by means of shutting up and closing said highway, wrongfully prevented him, the said plaintiff, from driving and conduct-

ing his said horses, wagons and carriages, laden as aforesaid, over and along said highway, as he was used and accustomed, and of right ought. And the plaintiff says that, by the means aforesaid, he hath been, and still is, deprived of the use of said highway, to which he is entitled, and hath sustained damage to the value of one thousand dollars."

We have set out at length the averments in the declaration, in order that it may be seen whether the allegation of special damage to the plaintiff is of such a nature as to entitle him to maintain the action. It is not averred that the highway, which was obstructed, was the only way to and from his farm, or that it was necessary to enable him to pass and re-pass from his farm to mill, market, &c. The averment is, that it was the most direct and convenient route.

By its obstruction, therefore, he experienced no other damage or inconvenience, except such as was common to other citizens having occasion to pass by that way; they, as well as himself, were obliged to go by a longer or more circuitous route.

The special damage alleged is that, having gone to Frederick city by the highway in question, as he was returning home, he met the obstruction, was withheld by the defendant from removing it, and in consequence, "*was obliged to proceed to his farm by a very circuitous route.*"

This is nothing more than a statement of a particular instance, in which the plaintiff suffered an inconvenience which was common to the rest of the community, and is not, in our opinion, such special damage as entitles him to maintain this action.

The objection is not to the form of the averment, but is substantial, going to the very ground and cause of action, which, as was said by TINDAL, Chief Justice, in *Wilkes vs. Hungerford M. Co.*, 2 *Bing.*, *N. C.*, 281, exists only "where the plaintiff has sustained some peculiar injury beyond that which affects the public at large."

All the authorities agree that to support the action, the damage must be different, not merely in degree, but different in kind from that suffered in common, hence it has been well-settled, that though the plaintiff may suffer more inconvenience than others from the obstruction, by reason of his proximity to the highway, that will not entitle him to maintain an action. *Stetson vs. Faxon,* 19 *Pick.,* 147 ; *Thayer vs. Boston,* 19 *Pick.,* 511, 514; *Quincy Canal vs. Newcomb,* 7 *Met.,* 283.

A great number of cases both English and American were cited at the bar and have been examined by us, in which the question has been considered, as to what will constitute such special or particular damage as to entitle a party to sue for an obstruction of a highway.

We deem it unnecessary to refer to them here particularly, or to enter upon an analysis of them. As we before remarked the decisions are not without some apparent conflict. But we have found no well considered case which sustains the judgment of the Court below on the demurrer, or justifies us in holding the damage here alleged to be sufficient.

*Rose vs. Miles,* 4 *M. & S.,* 101, has been much relied on by the appellee. In that case the plaintiff was obstructed in navigating a river by the defendant wrongfully mooring a barge across it; it was held that he could maintain his action, it being alleged that he was compelled to unload his barges and carry his goods overland by which he incurred great expense. But that case is very unlike this ; here no substantial damage is alleged. The case most resembling this is *Greasly vs. Codling,* 2 *Bing.,* 263, in which the plaintiff had been delayed four hours by an unlawful obstruction in a highway, and his being thereby prevented from performing the same journey as many times in a day as if the obstructions had not existed, was held to be a sufficient special or particular injury to entitle him to maintain a suit. But it appeared in that case that the plaintiff was engaged as a " coal higgler," his occupation was carrying coal upon the highway, and the

damage he suffered was in the conduct of his business and of a substantial nature; and was held to be different in kind from that suffered by the public at large.

The case of *Greasly vs. Codling*, was decided in the Common Pleas in 1824; and was ruled upon the authority of Lord ELLENBOROUGH's judgment in *Rose vs. Miles;* and we think carried the doctrine in support of such actions farther than the previous decisions would warrant. But the case before us cannot be brought even within the principles of *Greasly vs. Codling.*

In England the tendency of more recent decisions has been rather to restrict the rule regulating the cases in which this description of action may be maintained; and we agree with what was said by MARTIN, B., in the late case of *Winterbottom vs. Derby*, that the rules of law allowing such actions ought not to be extended.

The case of *Winterbottom vs. Derby*, 2 *Exch.*, 316, decided in 1867, was very analogous to this. The plaintiff sued for damages caused by the obstruction by the defendant of a highway, being a public footway, alleging "that he was on divers days hindered and prevented from passing and re-passing over and along said footway and using the same, and was obliged to incur, and did incur, on divers days, great expense in and about removing said obstructions, in order that he might, and before he could, pass and re-pass over and along the said footway, and use the same in and about his lawful business and affairs, and was greatly hindered and delayed in and about the same." It was decided, all the Judges concurring, that the action could not be maintained. In the course of the argument KELLY, C. B., said: "But he is not damaged more than others of the public who may happen to pass along the way. The result of this argument would seem to be that every individual who attempted to pass along the path, could bring an action." And in rendering his judgment, after stating that the plaintiff had suffered an inconvenience common to all who happened to pass that way, the

same learned Judge remarked: "I think that to hold the action maintainable, would be equivalent to saying it is impossible to imagine circumstances in which an action could not be maintained." This observation, we think, may be applied with great propriety to the present case.

In the same opinion the true principle is stated to be "that he and he only can maintain an action for an obstruction, who has sustained some damage peculiar to himself, his trade or calling."

As no such damage is alleged in the declaration in this case, we are of opinion the demurrer ought to have been sustained. The judgment must therefore be reversed; and it is of course unnecessary to express any opinion upon the questions presented by the bills of exceptions.

*Judgment reversed.*

(Decided 3d March, 1871.)

STEWART, J., delivered the following dissenting opinion:

This was a suit to recover damages for alleged obstruction to a public road, occasioning special damage to the plaintiff.

If the road in question was a public highway, and the defendant obstructed it, he was liable not only to criminal prosecution for the injury to the public, but to the plaintiff in this action, if he suffered *particular* damage from the obstruction. The prosecution and conviction of the defendant for the public offence, would be no adequate atonement or indemnity to the plaintiff for any special injury he may have received more than others. *Mayor and C. C. of Baltimore vs. Marriott,* 9 *Md.,* 160; *Stetson vs. Faxon,* 19 *Pick.,* 147; *Angell on Highways, sec.* 285.

The *special* damage claimed to have been incurred by the plaintiff, on one or sundry occasions, being the ground of the action, must be distinctly alleged and proved, and where this is done, the general allegation in the declaration that the plaintiff has sustained damage, is sufficient without a more formal and particular statement. The 2d and 3d sections of

Article 75, of the Code, warrant this form of proceeding. The fifth section also of the same Article, dispensing with " time and place," where they are not material or form no part of the action, permits the plaintiff to recover for injuries* occasioned by the obstruction at different times. This avoids a multiplicity of suits for several and distinct injuries arising from the obstruction, or the insertion of different counts for each injury, if more than one, and can occasion no surprise to the defendant. The declaration sufficiently alleges the special injury sued for, and the demurrer thereto was properly over-ruled.

The Court below, in the exercise of its sound discretion, was authorized, upon motion of the plaintiff, to strike out the third and fourth pleas; the third plea, if true, afforded no bar to the recovery sought. The defendant could have the benefit of the fourth plea under the general issue. These pleas were immaterial and could be disposed of by the Court, under the motion to strike them out, or by demurrer.

The introductory clause of the first prayer of the plaintiff, however inartificial its terms, substantially submitted to the jury the question whether the road was a public highway, and instructed them if they believed from all the evidence it had been used by the public as a highway for twenty or more years without interruption, they should infer its dedication as a highway. The road under such circumstances is presumed to belong to the public, who acquire a right to use the same from presumptive dedication, after such an uninterrupted *user*. *Day vs. Allender*, 22 *Md.*, 528.

The fact of dedication may be proved directly, or inferred from circumstances such as the permissive *user* by the public, without any act of the owner to shew he only intended a license to pass over the land, and not to dedicate the right of way. The putting up a bar or gate, or excluding by positive prohibition persons from passing, may indicate this purpose. The common course is said to be by closing the passage for one day in each year. But the erection of a gate is not con-

clusive evidence of prohibition, as it may have been an original qualification. *Best on Pres.*, sec. 111 ; 2 *Green. on Ev.*, sec. 644 ; *Angell on Highways*, secs. 152, 153. Whenever the *animus dedicandi* appears, the dedication is accomplished. The Statute of Frauds does not apply to it. No writing is necessary. It is usually established by circumstances *in pais*. The *user* by the public ought to be unequivocal. Circumstances indicating the purpose to permit the road to be used, so long as it may suit the owner's convenience, and that it was merely a license given revocable at his pleasure, will rebut the presumption of dedication.

Presumptive dedication, from the public *user* is but the conclusion from facts, and is subject to be repelled in every case by evidence, shewing that such was not the intention of the owner. The circumstances are not to be tortured so as to convert the liberality of the owner, it may be, in allowing his land to be used, subject at all times to his revocation, into an indefeasible right of way. This would allow the public to take advantage of a mere act of grace and by the repetition, establish an absolute right. The intention to dedicate the road to the public, contradistinguished from its permissive use, should be apparent.

To rebut the presumption of dedication, the jury could weigh the evidence that the road, although used by the public, was one over which the public authorities exercised no official control, and made no repairs on it; that the owner of the soil also used it, repaired it, paid the taxes thereon, and exercised acts of ownership over it, and did interrupt the public in the use of it occasionally within the twenty years. "The issue is a mixed question of law and fact to be found by the jury, under the direction of the Court, upon consideration of all the circumstances." 2 *Greenleaf on Ev.*, sec. 662.

Whether it is the presumption of law or the inference from the facts deducible by the jury from all the evidence, the jury must find the road to have been dedicated to the public,

before they could allow any damage accruing to the plaintiff from obstruction to it by the defendant. All the evidence was before the jury; the circumstances of the public *user*, tending to shew there had been a dedication of the road— the counter-evidence, to prove there had been no dedication. Under the instruction they must consider all the evidence, and they might infer that the road was not dedicated to the public, but was merely used by them at the discretion of the owner. I do not see how this part of the prayer could injure the defendant.

But the latter part is too vague. If the jury should find there had been a dedication to the public, they might consider themselves bound to allow to the plaintiff damages for the obstruction, beyond the amount of the particular injury, for which he could alone recover. They might give damages for conjectural inconvenience to the plaintiff, from his immediate connection with the road, and more frequent occasion to use it than others, including probable or possible diminution in the value of his property from the interruption of convenient access thereto. Damages can never be apportioned according to the distance at which a party may reside from the road. The proximity of the plaintiff's residence to it, and its convenience to him more than to others, gives him no claim, on that account, to damages. Any allowance of that sort would be theoretic and erroneous. The plaintiff could only legally recover for any positive loss sustained. The necessity of having to take another road, or being longer on a journey in consequence of the obstruction, are not sufficient of themselves; but if the plaintiff, having, in part, made his journey over the road, not knowing of the obstruction, is turned back and compelled to proceed, by a more circuitous route, or meeting the obstruction, is prevented from removing it, so that he may pass, this will be sufficient ground of complaint to entitle him to recover damage to the extent of the loss. *Angell on Highways,* sec. 285.

If he did not actually encounter the obstruction, and sustain special damage therefrom, the fact of the existence of the obstruction could give no right to recover for mere imaginary injury. The prayer ought to have been more specific, and should not have been granted as presented, because calculated to mislead the jury, without the limitations above stated.

The second prayer, independent of the objection to it, from its identification with the first, and. the defect therein, which have been stated, was objectionable. Antecedent obstructions might have been placed in the road by the owner of the land, in order to assert his title, before there had been such *user* as would amount to a dedication. They might be legitimate circumstances, to be considered by the jury in determining whether there had been a dedication or not. The prayer, as presented, might mislead the jury. If the prayer had limited the inquiry to any obstruction, after it had become a public road, from uninterrupted *user* for twenty years; if the jury so found from all the evidence, it would not have been objectionable.

If the third prayer did not refer to the first containing objectionable matter, it might have been granted. The fact of gates or bars, as above explained, having been placed upon the road, in itself, would not repel the presumption of dedication of the road, because the dedication might have been with such reservation.

The fourth prayer was unobjectionable. The fact that the road had not been taken possession of by the public authorities, although such a circumstance might be considered by the jury, in the inquiry as to the dedication, would not, in itself, prevent the inference of the dedication of the road to the public, although such a circumstance might relieve the public authorities from responsibility on account of any damage arising from the condition of the road.

The fifth prayer, unaffected by reference to the first, is liable to no objection, in allowing the jury in the award of dam-

ages, to consider any circumstances of violence characterizing the obstruction complained of.

In actions of *tort*, all the circumstances attending it, make up its character. It may be the result of malicious feeling; or proceed from ignorance, negligence or inexcusable carelessness. It may be wanton and violent, or the result of a purpose, to maintain or assert the supposed rights of the party. The motive and conduct indicative thereof, may aggravate or extenuate the wrong, and the damage for the injury should be in proportion to its true character. *Mayne on Dam.*, 12; *Sedgwick on Dam.*, 455.

The sixth prayer, abstract from the first, in its explanation of the effect of the deeds offered in evidence by the defendant, might have been granted. There is no valid objection to the explanation given to the jury in the seventh prayer, as to the gates or bars on the road. Their purpose and object were legitimate subjects of inquiry by the jury in ascertaining whether there had been a dedication of the road.

The eighth prayer, referring to the pleadings and evidence, in the omission of any reference to the finding of any obstruction, or special damage, by the jury, was defective, and ought not to have been granted. Independent of the objections stated to the prayers themselves, they might have been refused, because of their reference to isolated facts already comprised in the first prayer. It is error to permit a fact to be culled out for special instruction in regard to its particular force and effect. This would allow a general prayer as to the effect of all the facts, considered together, in relation to the same subject of inquiry before the jury, to be offered; and afterwards, a prayer, as to the tendency of every fact comprised in the general prayer, considered by itself, upon precisely the same subject. Such a practice is irregular, and calculated to embarrass the jury.

The permission allowed counsel to read certain law to the jury, after they had been instructed as to the law of the case, and to which objection is made in the second bill of excep-

tions, is not the subject of appeal. *Augusta Ins. & Bk. Co.,
vs. Abbott,* 12 *Md.,* 349.

Such a course, however, is irregular, but it must be left to
the discretion of the Court below in the trial of the cause.
Entertaining different views from the majority of the Court,
I think the judgment below should be reversed and a new
trial ordered.