## THE COUNTY COMMISSIONERS OF ANNE ARUNDEL COUNTY *vs.* WILLIAM S. WATTS.

*Liability of County Commissioners for Failure to Repair Bridge—Bill of Particulars.*

Plaintiff was required by contract to do work at a place to which the only means of access was a certain public highway, over which it was necessary for him to haul material for the work. It was the statutory duty of the defendants, the County Commissioners, to keep the highway in repair. On account of their failure to repair a bridge which was part of the highway, the same became impassable; plaintiff was unable to convey in due time the material to the place where his contract required it to be used, which made him liable to a penalty for each day's delay in the work, and he was compelled, at an increased cost, to transport the material in hand cars on a railway. *Held,* that since the wrongful act of the defendants in failing to keep the bridge in repair had caused to the plaintiff an injury different in degree and kind from that suffered by the public at large, he is entitled to recover damages therefor from the County Commissioners.

Where a bill of particulars was not filed by the plaintiff in a cause until after the defendant had demurred to the declaration, the bill of particulars is not to be considered in passing on the demurrer.

*Decided January 14th, 1910.*

Appeal from the Circuit Court for Anne Arundel County (BRASHEARS, J.).

The cause was argued before BOYD, C. J., BRISCOE, PEARCE, SCHMUCKER, BURKE, THOMAS, PATTISON and URNER, JJ.

*James W. Owens,* for the appellant, submitted the cause on his brief.

*James M. Munroe,* for the appellee.

BOYD, C. J., delivered the opinion of the Court.

The appellee sued the appellant for damages sustained by him by reason of its failure to keep in repair a bridge which was a part of the only public highway the plaintiff could use in hauling material to a point where it was bound under penalty to do certain work within a limited time. The declaration alleges that the plaintiff had a contract with the Maryland Electric Railway Company to construct for it some concrete piers in the Patapsco river, in the construction of which lumber, sand, cement and other materials were needed, which the plaintiff was obliged under his contract to provide and convey to the place where the piers were to be constructed; that the plaintiff was required to commence work on the piers within five days from the date of the contract, and to complete them within twenty working days from that date, there being a penalty of $15.00 per day to be paid by the plaintiff for every day beyond said period required for the completion of the piers; that the plaintiff had provided

lumber, cement and other materials and deposited the same at Pumphrey's station on said railway company's line of railroad, and had provided sand a short distance below said station, all of which materials he was prepared to haul from said points to the place where said piers were to be constructed, said haul to be over the county public road, thence by a county public bridge to the lands of one Linthicum, through whose lands the plaintiff had made arrangements to haul said materials for the purposes aforesaid; that the said public county road, of which the bridge was a part, was the only public road affording access from said Pumphrey's station and its neighborhood to the place where the piers were to be constructed, and the plaintiff had no other access by a public highway for himself, his servants and agents, his beasts, carts and wagons, to transport the materials from Pumphrey's station to said place.

It is further alleged that relying upon the county public road and bridge as the means of access to said place, he entered into the contract to construct the piers and laid out and expended large sums of money in the purchase of lumber, cement and other materials, and in providing sand and in depositing the same at Pumphrey's station, to be from there transported; that the bridge was permitted by the defendant to become wholly impassable, although it had the custody and control thereof and was responsible for the proper maintenance of it for public travel; that the defendant, unmindful of its duty in the premises, and with notice of the bad condition of the bridge, suffered and permitted it to become and to remain out of repairs and broken down so that it was impossible to pass over it with carts and wagons and transport over it the material aforesaid.

It is then alleged that the situation of the plaintiff was peculiar and different from that of others in respect to the road and bridge and the use thereof, in that the plaintiff was under contract to construct said piers as aforesaid and could not furnish and transport to the place where they were to be constructed material other than that already provided, within

the time required by his contract and for many days there after, and could not transport by any public highway the material already provided, and was by reason thereof required to lay out and expend large sums of money in and about the transportation of said material greatly in excess of the cost of hauling the same over said public road and bridge, as the plaintiff was entitled to do, and expected to do when he entered into said contract.

The trial resulted in a verdict for the plaintiff, and this appeal was taken from the judgment rendered thereon. The appellant demurred to the declaration, but the demurrer was overruled. The only ground relied on in the brief is that the allegation in the narr. that the bridge in question was the only means of access to the point where the contract was to be performed was contradicted by the bill of particulars, which appellant contends shows there was a railroad by which the materials could be carried. Without meaning to say that it would have made any difference in our judgment, the record shows that the bill of particulars was not filed until after the demurrer had been overruled, and hence could not have been considered with the demurrer, even if it could have properly been considered if filed sooner. We will not therefore further refer to the demurrer, except to add that it was properly overruled.

The defendant excepted to the granting of the plaintiff's prayer and to the rejection of its prayer seeking to take the case from the jury. The two points suggested in the brief are: (1) That the damage sustained by the plaintiff differed only in degree and not in kind from other persons using that bridge; and (2), that there can be no recovery because the appellant cannot be held responsible in action *ex delicto*. The learned attorney for the appellant, after discussing the first point, states in his brief: "The appellant, however, under a probability of criticism, at its advancing a new doctrine in Maryland, says: that while counties in Maryland can be sued ' *ex contractu*' that notwithstanding a long

line of decisions to the contrary, the appellant asserts that they cannot be held responsible *'ex delicto.'*"

As the latter point is answered by so many cases in this State it is not necessary to dwell upon it. It cannot properly be said to be merely "advancing a new doctrine in Maryland," as that doctrine was advanced and rejected in *Baltimore* v. *Marriott,* 9 Md. 160, over fifty years ago, and in *County Commissioners* v. *Duckett,* 20 Md. 468—forty-five years ago—the rule announced in *Baltimore* v. *Marriott* was distinctly applied to actions *ex delicto* against County Commissioners. Too many cases have followed those to permit us to entertain the suggestion that there is any possible reason for now considering the propriety of adopting the opposite view.

It is well settled that a public nuisance "is not in itself a ground of civil action by an individual, unless he has suffered from it some special and particular damage, which is not experienced in common with other citizens. 9 Md. 178. In such case the actual damage constitutes the gist of the action, and must be averred and proved." *Houck* v. *Wachter,* 34 Md. 265. Again it was said in that case: "All the authorities agree that to support the action, the damage must be different, not merely in degree, but different in kind from that suffered in common; hence it has been well settled, that though the plaintiff may suffer more inconvenience than others from the obstruction, by reason of its proximity to the highway, that will not entitle him to maintain an action." After setting out at length the averments in the declaration, the Court also said: "It is not averred that the highway, which was obstructed, was the only way to and from his farm, or that it was necessary to enable him to pass and re-pass from his farm to mill, market, etc. The averment is, that it was the most direct and convenient route." It was said by JUDGE ALVEY in *Garitee* v. *Baltimore,* 53 Md. 437, after referring to the principle announced in *Houck* v. *Wachter,* that: "In the application of this general rule, however, each case must depend, more or less, upon its own special circumstances,"

and it may be well to cite some of the cases in which recovery has been allowed.

In *Rose* v. *Miles,* 4 M.· & S. 101, cited in *Houck* v. *Wachter* and *Garitee* v. *Baltimore,* the plaintiff was obstructed in navigating a river by the defendant wrongfuly mooring a barge across it; it was held he was entitled to maintain his action, it being alleged that he·was compelled to unload his barges and carry his goods overland, by which he incurred great expense. In *Wilkes* v. *Hungerford Market Co.,* 2 Bing. N. C. 281, cited in *Garitee* v. *Baltimore, supra,* and *Crook* v. *Pitcher,* 61 Md. 510, the plaintiff was a bookseller who had a shop by the side of a highway which was obstructed by the defendant, and the declaration alleged special loss in his trade and business. TINDALI., C. J., said: "All who passed had the right of way; but all had not shops * * *. In *Baker* v. *Moore,* the refusal of the plaintiff's ten·· ants to remain on the premises was considered damage sufficiently peculiar and private to entitle the plaintiff to sue the defendant for having erected a wall across a common way used by the tenants." In *Rose* v. *Groves,* 5 M. & G. 613, cited in *Garitee's Case, supra,* the declaration alleged that the plaintiff was possessed of a public house abutting on a navigable river, and that the defendant wrongfully and maliciously placed upon the river, and kept there for a considerable time, certain timbers whereby the access to the house was obstructed, and divers persons were prevented from coming to the house, who would otherwise have done so. The Judges held that the declaration presented a case of special and particular damage to the plaintiff, and that the action was maintainable.

Other cases might be cited, but that of *Bembe* v. *Anne Arundel County,* 94 Md. 321, is conclusive of this. The County Commissioners had allowed a bridge, which was part of a public highway, to become and remain broken down and impassable, and in passing on a demurrer to the declaration this Court said: "Inasmuch, then, as the declaration dis· tinctly alleges that the highway with the bridge in question

was the *only* means by which the appellant had access to and egress from his farm and buildings, it shows on its face a special and particular injury inflicted on the plaintiff by rea son of the non-repair of the thoroughfare; and it shows an injury differing in kind from that which other members of the community can suffer from the same cause. Of course, if the appellant—the plaintiff below—has any other way or road, by which he can get to and from his premises, he cannot maintain this action even though he is put to more inconven ience or is required to travel a much greater distance in us ing the other highway."

As we have seen, this declaration alleges that this was the only county public road leading from Pumphrey's station to the point where the piers were to be constructed, and that the plaintiff had no other access by the public highway to trans port the material. It further distinctly alleges that he could not provide and transport to the place where the piers were to be constructed material other than that already provided, within the time required by his contract and for many days thereafter, and that he could not transport by any public highway the material already provided for said purpose to the place where the piers were to be built. The evidence shows that there was no other county road which he could use, and he was required to make arrangements with the rail road company to haul the material, which was done by run ning handcars between the times of the regular cars coming and going every half hour on a single track, which caused a considerable loss of time and required the employment of more men. It was therefore alleged and proved that the plaintiff was deprived of the use of the only public county road which passed the points between which the material was to be hauled. It was also shown that the bridge was gener ally used by all the farmers in that section of the county in hauling their produce to Baltimore, but that there was a road that led from Pumphrey's to Light Street Bridge which they could use, although it was two or three miles longer.

. No authority has been cited, and we are satisfied that none could be, to show that the railroad which ran between the points named was such a road as would take the case out of the principle announced in *Bembe's Case, supra.* It might as well have been said that a boat could have been employed by Bembe to cross the waters over which the bridge had stood. The railroad track could not be used as a public highway by the plaintiff, and inasmuch as, according to the allegation in the narr. and the testimony, there was no other road over which the plaintiff could haul the material, the damage to him differed both in kind and degree from that which the general public suffered. There was, therefore, no error in the rulings on the prayers.

.. There were also several exceptions taken to the rulings on the testimony, but they were not pressed, and we see no error in them.

> *Judgment affirmed, the appellant to pay the costs, above and below.*